✓ ____ FILED   ___ ENTERED
____ LOGGED  _____ RECEIVED

10:59 am, Apr 15 2021

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____MD_____ Deputy

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| IN THE MATTER OF THE SEIZURE OF THE FOLLOWING PROPERTIES: | | |
| (1) Monies Held in the Bank Accounts at BANK OF AMERICA Listed in Attachment A-1; | Case No. | GLS-21-0696 |
| (2) Monies Held in the Bank Accounts at USAA FEDERAL SAVINGS BANK Listed in Attachment A-2; | Case No. | GLS-21-0697 |
| (3) Monies Held in the Bank Account at PNC BANK ACCOUNT NUMBER 53-6132-6527 Listed in Attachment A-3; and | Case No. | GLS-21-0698 |
| (4) A 2018 Tesla Model 3 VIN: 5YJ3E1EBXJF1062229 | Case No. | GLS-21-0699 |
| | | ***UNDER SEAL*** |

## AFFIDAVIT IN SUPPORT OF SEIZURE WARRANT

I, Matthew Riemenschneider, being duly sworn, depose and state:

### AGENT'S BACKGROUND

1.      I am "an investigative or law enforcement officer" of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, the offenses enumerated in 18 U.S.C. § 2516.

2.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, law enforcement and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not set forth all my knowledge about this matter.

3.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since 2016. I am currently assigned to a squad in the Baltimore Division

responsible for investigating complex financial crimes such as mail fraud, wire fraud, false claims, and money laundering. I was previously assigned to a violent crimes squad, where I was responsible for the investigation of violent and threat-based crimes, including bank robbery, Hobbs Act robbery, extortion, and kidnapping. I have prepared and executed multiple search and arrest warrants. As a federal agent, your affiant is authorized to investigate violations of laws of the United States and is a law enforcement officer with the authority to execute warrants issued under the authority of the United States.

## PURPOSE OF THE AFFIDAVIT

4.    I submit this affidavit in support of the application made by the United States of America for a seizure warrant authorizing the seizure of the following funds and further described in Attachment A-1, A-2, and A-3 under the control of **RUDOLPH ELWOOD BROOKS, JR., also known as RUDOLPH BROOKS, JR.** ("Brooks"):

- **$793.57 from Bank of America Account Number 4460-2148-8469 held in the name of Cars Direct by Gavawn HWB Bobs Motor Inc. ("TARGET ACCOUNT 1")**
- **$52,293.85 from Bank of America Account Number 4460-4490-6494 held in the name of Rudolph E. Brooks Jr. ("TARGET ACCOUNT 2")**
- **$500,000 from Bank of America Account Number 4460-4618-2287 held in the name of Payroll by BJM ("TARGET ACCOUNT 3")**
- **$24,455 from Bank of America Account Number 4460-4648-5007 held in the name of Cars Direct by Gavawn HWB Bobs Motor Inc. ("TARGET ACCOUNT 4")**
- **$200,062.98 from Bank of America Account Number 4460-4648-5010 held in the name of Cars Direct by Gavawn HWB Bobs Motor Inc. ("TARGET ACCOUNT 5")**
- **$9,653.87 from Bank of America Account Number 4460-4121-2466 held in the name of Tabernacle of Restoration Ministries Inc. ("TARGET ACCOUNT 6")**
- **$1,056,320.35 from Bank of America Account Number 4450-4121-2495 held in the name of Tabernacle of Restoration Ministries Inc. ("TARGET ACCOUNT 7")**
- **$12,935.88 from Bank of America Account Number 4460-3459-5297 held in the name of Tabernacle of Restoration Ministries Inc. ("TARGET ACCOUNT 8")**

- **$150,227.98 from USAA Federal Savings Bank Account Number 01097-0020-1 held in the name of Rudolph Brooks, Jr. ("TARGET ACCOUNT 9")**
- **$100,016.92 from USAA Federal Savings Bank Account Number 01097-0019-8 held in the name of Rudolph Brooks, Jr. ("TARGET ACCOUNT 10")**
- **$189,376.46 from PNC Bank Account Number 53-6132-6527 held in the name of Madaro, LLC ("TARGET ACCOUNT 11")**

**(collectively, the "TARGET ACCOUNTS").**

5. I also submit this affidavit in support of the application made by the United States of America for a seizure warrant authorizing the seizure of a **2018 Tesla Model 3, Vehicle Identification Number 5YJ3E1EBXJF1062229** (the "**TARGET VEHICLE**"), further described in Attachment A-4.

6. As further described below, the aforementioned funds in the **TARGET ACCOUNTS** and the **TARGET VEHICLE** constitute or are derived from the proceeds traceable to the false statements made on bank loan applications in violation of 18 U.S.C. §§ 1343 (Wire Fraud) and 1344 (Bank Fraud).

## APPLICABLE LAW

A. <u>Wire Fraud and Bank Fraud</u>

7. Title 18, United States Code, Section 1343 (Wire Fraud) provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice," shall be guilty of a federal offense.

8. Title 18, United States Code, Section 1344 (Bank Fraud) provides that "[w]however knowing executes, or attempts to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other

property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises," shall be guilty of a federal offense.

B.    Asset Forfeiture Statutes

9.    Proceeds and any property derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 (Wire Fraud) and 1344 (Bank Fraud) are forfeitable to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C). Further, property subject to civil forfeiture may be seized pursuant to 18 U.S.C. § 981(b).

10.    The proceeds of wire fraud and bank fraud are subject to forfeiture under both civil and criminal forfeiture authorities. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud or bank fraud is subject to civil forfeiture. Title 18, United States Code, Section 982(a)(2)(A) provides for the criminal forfeiture of any property constituting, or derived from, proceeds obtained directly or indirectly, as a result of a wire fraud or bank fraud offense affecting a financial institution. In addition, 28 U.S.C. § 2461(c) provides that "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized," then the government can obtain a forfeiture of property "as part of the sentence in the criminal case." Thus, pursuant to 18 U.S.C. § 982(a)(2)(a) and 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to wire fraud is subject to criminal forfeiture.

11.    Further, 18 U.S.C. § 984 allows the United States to seize for civil forfeiture identical substitute property found in the same place where the "guilty" property had been kept. For purposes of Section 984, this affidavit need not demonstrate that the funds now in the **TARGET ACCOUNTS** are the particular funds involved in the wire fraud and bank fraud

violations, so long as the forfeiture is sought for other funds on deposit in that same account. Section 984 applies to civil forfeiture actions commenced within one year from the date of the offense.

12. This application seeks a seizure warrant under both civil and criminal authority because the property to be seized could be placed beyond the Government's reach.

13. Pursuant to 18 U.S.C. § 981(b), property subject to civil forfeiture may be seized via a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe that the property is subject to forfeiture. The criminal forfeiture statute, 18 U.S.C. § 982(b)(1), incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for a criminal forfeiture action. Section 853(f) permits the government to request the issuance of a seizure warrant for property subject to criminal forfeiture.

## PROBABLE CAUSE

14. **Brooks** is a Maryland resident who is known to reside at an address in Cheltenham, Maryland ("Cheltenham address") or an address in Bowie, Maryland ("Bowie address"). He is the owner of Cars Direct by Gavawn HWD Bob's Motors ("Cars Direct"), Madaro, LLC ("Madaro"), and Kingdom Tabernacle of Restoration Ministries ("Kingdom Tabernacle").[1]

15. **Brooks** is listed as the resident agent with the Maryland State Department of Assessments and Taxation ("SDAT") for Cars Direct and the Kingdom Tabernacle, and as resident agent with the District of Columbia for Madaro.

---

[1] Internal Revenue Service records and the Payroll Protection Program loan application contain the name Kingdom Tabernacle of Restoration Ministries, while some financial records, corporate records, and the Economic Impact Disaster Loan application contain the name Tabernacle of Restoration Ministries. Although there are two names, they contain the same Taxpayer Identification Number and describe the same business owned by **Brooks**.

16.     Cars Direct was incorporated with SDAT on October 29, 2010. It was forfeited on October 1, 2012 and subsequently revived on May 28, 2020.

17.     Kingdom Tabernacle was incorporated with SDAT on September 5, 2017. The Articles of Incorporation for Kingdom Tabernacle, which were filed with the State of Maryland on September 5, 2017, were signed by **Brooks** and five (5) other trustees on July 3, 2017.

### *The Paycheck Protection Program*

18.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020 designed to provide emergency financial assistance to the millions of Americans suffering from the economic consequences of COVID-19.

19.     The CARES Act authorized up to $659 billion in forgivable loans to small businesses for employee retention and certain business expenses through a program called the Paycheck Protection Program ("PPP").

20.     The program authorizes qualifying small businesses and other organizations to receive loans that are 100 percent guaranteed by the Small Business Administration ("SBA"), and the full principal amount of the loans may qualify for loan forgiveness. The business must use PPP loan proceeds on payroll costs, mortgage interest, rent, and utilities. Initially, the program allowed the principal to be forgiven if the business spent the loan proceeds on qualifying expenses within eight weeks of loan issuance and used at least 75 percent of the loan for payroll. On June 5, 2020, the Paycheck Protection Program Flexibility Act of 2020 went into effect. This law extended the period from eight weeks to 24 weeks that the loan proceeds had to be spent and reduced the requirement that the loan proceeds be spent on payroll from 75 percent to 60 percent.

21.     The business's number of employees and average monthly payroll costs for the 12-month period prior to the disaster determine the amount of PPP funding that the business may receive. Businesses applying for a PPP loan must provide documentation showing their payroll expenses.

22.     To qualify for eligibility, businesses applying for a PPP loan needed to be in operation as of February 15, 2020.

23.     The SBA administers the program and has authority over all PPP loans. However, approved lenders (usually private banks and credit unions) issue the loans. The lenders receive and process PPP applications and supporting documentation, then make the loans using their own funds.

### *Economic Injury Disaster Loan*

24.     An Economic Injury Disaster Loan ("EIDL") is an SBA-administered loan designed to provide assistance to small businesses that suffer substantial economic injury as a result of a declared disaster. An EIDL helps businesses meet necessary financial obligations that could have been met had the disaster not occurred. It provides relief from economic injury that the disaster caused and permits businesses to maintain a reasonable working capital position during the period that the disaster affected.

25.     Additionally, the SBA offers an EIDL advance that is designed to provide emergency economic relief to businesses that are currently experiencing a temporary loss of revenue. This advance will not have to be repaid, and small businesses may receive an advance even if they are not approved for an EIDL loan. The maximum advance amount is $10,000. The amount of the loan offered as well as the advance amount are determined by the SBA based on the information provided on the loan application.

26.     EIDL funds are issued directly from the United States Treasury and applicants apply through the SBA via an online portal. The EIDL application process, which also uses certain outside contractors for system support, collects information concerning the business and the business owner, including information as to the gross revenues for the 12 months prior to the disaster; the cost of goods sold; and information as to any criminal history of the business owner. Applicants electronically certify that the information provided is accurate and are warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

27.     In March 2020, due to the COVID-19 pandemic, the SBA issued an EIDL declaration. The declaration made EIDL loans available nationwide to small businesses to help alleviate economic injury that COVID-19 caused. EIDL loans are usually limited to a maximum amount of $2 million. However, during the COVID-19 pandemic, EIDL loans were limited for a period of time to $150,000.

### Cars Direct Celtic Bank PPP Loan via Bluevine

28.     Bluevine Incorporated ("Bluevine") is a financial technology company headquartered in California that provides online business banking and financing to small and medium-sized businesses. Bluevine also serves as an originating agent for banks such as Celtic Bank Corporation ("Celtic Bank").

29.     Celtic Bank is a federally-insured financial institution headquartered in Salt Lake City, Utah and specializes in small business finance. Celtic Bank is an SBA Preferred Small Business Lender and participated as a lender in the PPP.

30.     Borrowers applied for PPP loans online through Bluevine's website by creating a Bluevine account. Borrowers were then able to enter information pertinent to the PPP loan

application, including but not limited to, payroll costs and number of employees. Borrowers would also upload supporting documentation, and sign loan documents electronically through the Bluevine account. Once a loan was approved, it would be funded by Celtic Bank.

31. On May 9, 2020, **Brooks** electronically submitted a PPP loan application, on behalf of Cars Direct, to Bluevine for a $1,556,589 PPP loan. **Brooks** represented on the loan application that Cars Direct had ten employees and an average monthly payroll of $622,635. **Brooks** was listed as the primary contact and electronically signed the application as the owner of Cars Direct.

32. In support of the loan application, **Brooks** submitted to Bluevine a 2019 IRS Form 940 and a 2020 IRS Form 1096.[2] The Form 1096 reported $724,469 in payments via ten Forms 1099-MISC issued by Cars Direct; it identified **Brooks** as the person to contact and was signed, but undated. The Form 940 reported $7,471,630 in total payments to employees from Cars Direct. The form was signed by **Brooks** and dated January 30, 2020.

33. Records obtained from the Internal Revenue Service ("IRS") reflect that neither the foregoing Form 940 nor the Form 1096 were on file with the IRS. Further, the IRS records did not have records of *any* filings, to include Forms 940 and 1096, made by Cars Direct, for any tax periods. Based on this information, your affiant believes that the Forms 940 and 1096 provided by **Brooks** to Bluevine in support of the Cars Direct PPP loan application were fraudulent.

34. On May 9, 2020, the Cars Direct PPP loan was approved and executed. **Brooks** executed the note with Celtic Bank as the owner of Cars Direct. Subsequently, Celtic Bank

---

[2] The Form 1096 is the Annual Summary and Transmittal of U.S. Information Returns for a business. The Form 940 is the Employer's Annual Federal Unemployment Tax ("FUTA") Return. Together with state unemployment tax systems, the FUTA tax provides funds for paying unemployment compensation to workers who have lost their jobs.

deposited $1,556,589 into **TARGET ACCOUNT 1** on May 12, 2020. Prior to the deposit of the PPP loan proceeds, **TARGET ACCOUNT 1** had a balance of $2,126.

35. A review of account records for **TARGET ACCOUNT 1** showed that, prior to the receipt of the Celtic Bank PPP loan proceeds, **TARGET ACCOUNT 1** was primarily funded by counter deposits, ATM deposits, bank transfers, and deposits from Square, Inc. Debits for **TARGET ACCOUNT 1** mainly consisted of purchases at automotive parts store, restaurants, retail stores, grocery stores, and automotive auctioneers. Noticeably absent from **TARGET ACCOUNT 1**'s account records were debits consistent with a legitimate employer such as payments for payroll or payroll taxes.

36. Based on the review of **TARGET ACCOUNT 1** and IRS records (or the lack thereof), your affiant believes that **Brooks** provided false and misleading information to Bluevine to obtain a PPP loan. More specifically, the evidence does not support the assertions made by **Brooks** on the PPP loan application, stating that Cars Direct employs ten individuals at an average monthly payroll of $622,635.

37. Beginning on May 12, 2020, and following the deposit of the PPP loan proceeds, **Brooks** initiated numerous transfers from **TARGET ACCOUNT 1** to **TARGET ACCOUNT 2**. **Brooks** opened **TARGET ACCOUNT 2** in his personal name on October 7, 2019 and is the sole signer on the account.

38. The records reflect that between May 12, 2020, and August 10, 2020, **Brooks** transferred $196,600 of PPP loan proceeds from **TARGET ACCOUNT 1** to **TARGET ACCOUNT 2**. The records further reflect that following the transfers to **TARGET ACCOUNT 2**, **Brooks** used the PPP loan proceeds for personal expenditures such as credit card bills, loan payments, purchases at restaurants, retail stores, grocery stores, and automotive

auctioneers. On May 11, 2020, the day before the PPP loan proceeds transfers from **TARGET ACCOUNT 1** began; **TARGET ACCOUNT 2** had a balance of $47. As of January 26, 2021, **TARGET ACCOUNT 2** had a balance of **$52,293.85**.

39.     On May 18, 2020, **Brooks** opened **TARGET ACCOUNT 3** held in the name of Payroll by BJM. The signature card for the account notes **Brooks**' title as "member" and lists him as the sole signer.  On the same day, **Brooks** transferred $500,000 of the PPP loan proceeds from **TARGET ACCOUNT 1** to **TARGET ACCOUNT 3**. As of January 31, 2021, **TARGET ACCOUNT 3** had a balance of **$500,000**, and there had been no activity in **TARGET ACCOUNT 3** outside of the initial deposit. Notably, although the name of the accountholder (Payroll by BJM) creates the appearance that **TARGET ACCOUNT 3** is associated with a payroll company, there have, in fact, been no payroll or payroll-related expenses paid from **TARGET ACCOUNT 3** in the nine months since the initial deposit of the PPP loan proceeds from **TARGET ACCOUNT 1**.

40.     On July 10, 2020, **Brooks** opened **TARGET ACCOUNT 4** and **TARGET ACCOUNT 5**, both in the name of Cars Direct. **Brooks** is listed as the "President" of the business and is the sole signer on both accounts. On July 13, 2020, **Brooks** initiated a transfer of $250,000 in PPP loan proceeds from **TARGET ACCOUNT 1** to **TARGET ACCOUNT 4**. On the same day, **Brooks** initiated a second transfer of $250,000 in PPP loan proceeds from **TARGET ACCOUNT 1** to **TARGET ACCOUNT 5**. **TARGET ACCOUNT 4** and **TARGET ACCOUNT 5** both had a $0 balance prior to the transfer of PPP loan proceeds from **TARGET ACCOUNT 1**.

41.     Following the transfer of PPP loan proceeds from **TARGET ACCOUNT 1** to **TARGET ACCOUNT 4**, **Brooks** initiated numerous transfers from **TARGET ACCOUNT 4** to

his personal account, **TARGET ACCOUNT 2**. From July 17, 2020 through September 4, 2020, **Brooks** transferred $90,000 from **TARGET ACCOUNT 4** to **TARGET ACCOUNT 2**. As of January 31, 2021, **TARGET ACCOUNT 4** had a balance of **$24,455**.

42.     Following the transfer of PPP loan proceeds from **TARGET ACCOUNT 1** to **TARGET ACCOUNT 5**, **Brooks** initiated a transfer for $25,000 on July 24, 2020 from **TARGET ACCOUNT 5** to his personal account, **TARGET ACCOUNT 2**. As of January 31, 2021, **TARGET ACCOUNT 5** had a balance of **$200,062.98**.

### *Purchase of the TARGET VEHICLE*

43.     As previously mentioned, beginning on May 12, 2020, **Brooks** began funneling PPP loan proceeds from **TARGET ACCOUNT 1** to his personal account, **TARGET ACCOUNT 2**. On July 30, 2020, **Brooks** initiated a wire transfer from **TARGET ACCOUNT 2** to Tesla Motors Inc. ("Tesla") for $60,407.

44.     Records obtained from Tesla reflect that the foregoing wire transfer was used to purchase the **TARGET VEHICLE**. The records further reflect that an order was placed on July 22, 2020 for the **TARGET VEHICLE** with a purchase date of July 29, 2020. Rudolph Brooks was listed as the customer and a District of Columbia driver's license was on file for a close relative of **Brooks**.

45.     Law enforcement databases reflect that the **TARGET VEHICLE** was registered with the State of Maryland on August 25, 2020. Further, **Brooks** is listed with the State of Maryland as the owner with the mailing address being the Cheltenham address.

46.     Based on the records from Tesla and for **TARGET ACCOUNT 2**, your affiant believes that **Brooks** used the Cars Direct PPP loan proceeds to purchase the **TARGET VEHICLE**.

47. The following diagram summarizing the foregoing transfer and flow of the Cars Direct PPP loan proceeds:



***Kingdom Tabernacle Celtic Bank PPP Loan via Bluevine***

48. On May 14, 2020, **Brooks** submitted a PPP loan application, on behalf of the Kingdom Tabernacle, to Bluevine for a $1,800,000 PPP loan. **Brooks** represented on the loan application that the Kingdom Tabernacle had twelve employees and an average monthly payroll of $720,000. **Brooks** was listed as the primary contact for the Kingdom Tabernacle and signed the application as the owner.

49.     In support of the loan application, **Brooks** submitted to Bluevine a 2019 IRS Form 940. The Form 940 reported $8,628,128 in total payments to employees for the Kingdom Tabernacle; it was unsigned, but listed **Brooks** as the owner.

50.     Records obtained from the IRS reflect that the foregoing Form 940 was not on file with the IRS. Further, IRS records did not identify *any* filings, to include Forms 940, made by the Kingdom Tabernacle for any tax periods. Based on this information, your affiant believes that for the Form 940 provided by **Brooks** to Bluevine in support of the Kingdom Tabernacle PPP loan application was fraudulent.

51.     On May 14, 2020, the Kingdom Tabernacle PPP loan was approved and executed. **Brooks** signed the note as the owner of the Kingdom Tabernacle. On May 15, 2020, Celtic Bank deposited $1,800,000 into **TARGET ACCOUNT 6**.

52.     Prior to the receipt of the Celtic Bank PPP loan, **TARGET ACCOUNT 6** was primarily funded by ATM deposits by various individuals and deposits from Square, Inc. totaling approximately $66,900 for the time period of January 2019 through May 14, 2020.[3] Also for the time period of January 2019 through May 14, 2020, debits for **TARGET ACCOUNT 6** mainly consisted on purchases at restaurants and retail stores, cash withdrawals, and transfers to other companies associated with **Brooks**. Noticeably absent from **TARGET ACCOUNT 6** were debits consistent with a legitimate employer such as payments for payroll or payroll taxes.

53.     On June 25, 2018, **Brooks** opened **TARGET ACCOUNT 7** in the name of the Kingdom Tabernacle; **Brooks** is the sole signer on the account. Following receipt of the PPP loan proceeds, **Brooks** transferred $100,000 and $1,007,000 from **TARGET ACCOUNT 6** to **TARGET ACCOUNT 7** on May 18, 2020 and May 28, 2020, respectively.

---

[3] This total excludes two (2) transfers from **TARGET ACCOUNT 1** that were proceeds received from the Cars Direct PPP loan.

54.     Prior to the foregoing transfers, **TARGET ACCOUNT 7** had a balance of $252. On July 29, 2020, **Brooks** transferred $25,000 from **TARGET ACCOUNT 7** to his personal account, **TARGET ACCOUNT 2**. As of January 31, 2021, **TARGET ACCOUNT 7** had a balance of $**1,056,320.35**.

55.     Additionally, on May 18, 2020, **Brooks** transferred $250,000 from **TARGET ACCOUNT 6** to **TARGET ACCOUNT 8**. **Brooks** opened **TARGET ACCOUNT 8** on September 23, 2017, in the name of the Kingdom Tabernacle; **Brooks**, listed as Pastor, was initially the sole signer on the account, but another individual ("Individual A") was added on as Treasurer on April 11, 2018.

56.     On May 28, 2020, **Brooks** initiated a $250,000 wire transfer from **TARGET ACCOUNT 6** to **TARGET ACCOUNT 9** held at USAA Bank. **TARGET ACCOUNT 9** was opened in **Brooks**' personal name in 2010. He is the sole signor. Prior to the wire transfer of PPP loan proceeds from **TARGET ACCOUNT 6**, **TARGET ACCOUNT 9** had a balance of $222 and minimal activity since the account's inception.

57.     On June 1, 2020, **Brooks** transferred $100,000 of PPP loan proceeds from **TARGET ACCOUNT 9** to **TARGET ACCOUNT 10** at USAA. **TARGET ACCOUNT 10** is a savings account held in **Brooks**' personal name and had a minimal balance prior to the foregoing transfer. As of September 28, 2020, **TARGET ACCOUNT 9** had a balance of $**150,227.98**. As of September 30, 2020, **TARGET ACCOUNT 10** had a balance of $**100,016.92**.

58.     As of January 31, 2021, **TARGET ACCOUNT 6** had a balance of $**9,653.87.**

*Summary of Funds Transfers-Kingdom Tabernacle*

59.     The following diagram summarizing the foregoing transfer and flow of the Kingdom Tabernacle PPP loan proceeds:



*DC Dragons Economic Injury Disaster Loan*

60.     On April 7, 2020, an EIDL application was purportedly submitted to the SBA by Individual A, on behalf of DC Dragons Martial Arts Training Center ("DC Dragons"). On the application, the business reportedly had seven employees and earned $150,000 in gross revenue in the 12 months prior to COVID-19 being declared a disaster. Additionally, DC Dragons reported on the application $85,000 in cost of goods sold and $25,000 in rental losses due to the disaster.

61.     The application provided the SBA with **TARGET ACCOUNT 8** as the account into which EIDL funds could be received. The application stated that **TARGET ACCOUNT 8** was in the name of DC Dragons.

62.	Contrary to the EIDL application, records obtained from Bank of America show that **TARGET ACCOUNT 8** is held in the name of Kingdom Tabernacle, not in the name of DC Dragons. At the time of the application, **Brooks** and Individual A were listed as signers for **TARGET ACCOUNT 8**.

63.	Records obtained from the IRS reflect that no payments were issued to individuals by DC Dragons for 2018 or 2019, via Form 1099 or Form W-2. Further, the review of the IRS records identified the last tax period with a tax filing for DC Dragons was for the 2012 tax year.[4]

64.	On June 15, 2020, the DC Dragons' EIDL was approved and executed. The SBA deposited $25,400 and $7,000 into **TARGET ACCOUNT 8** on June 23, 2020 and June 30, 2020, respectively.

65.	Following the foregoing transfer of Kingdom Tabernacle PPP loan proceeds and the deposit of DC Dragons EIDL loan proceeds into **TARGET ACCOUNT 8**, **Brooks** initiated numerous transfers to his personal account, **TARGET ACCOUNT 2**. More specifically, between July 17, 2020 and August 10, 2020, **Brooks** transferred $95,000 from **TARGET ACCOUNT 8** to **TARGET ACCOUNT 2**. As of January 31, 2021, **TARGET ACCOUNT 8** had a balance of **$12,935.88**.

### *Economic Injury Disaster Loan Summary*

66.	On the same day (April 7, 2020) as the foregoing DC Dragons EIDL loan application, **Brooks** applied for three additional EIDL loans using various entities owned and/or operated by **Brooks**. EIDL records reflect that all four EIDL loan applications, including the DC Dragons EIDL application purportedly submitted by Individual A, were submitted within a few

---

[4] DC Dragons filed for extensions for the 2016, 2018, and 2019 tax years.

hours (in some cases, minutes) of each other from the same IP address.[5] The following chart depicts the foregoing EIDL loan application submission information:

| EIDL Applicant | Date Submitted | Time | IP Address |
|---|---|---|---|
| Kingdom Tabernacle | April 7, 2020 | 12:29PM | 2601:142:4201:2520:8591:3c65:1e2e:4572 |
| DC Dragons | April 7, 2020 | 2:27PM | 2601:142:4201:2520:8591:3c65:1e2e:4572 |
| Cars Direct | April 7, 2020 | 2:48PM | 2601:142:4201:2520:8591:3c65:1e2e:4572 |
| Brooks Motors | April 7, 2020 | 3:04PM | 2601:142:4201:2520:8591:3c65:1e2e:4572 |

67.     Records reflect that IP Address 2601:142:4201:2520:8591:3c65:1e2e:4572 on the above-listed date and times was registered to "Randolph Brooks" with the Bowie address listed, as well as a certain phone number with a 240 area code ("the 240 Number") and a certain username ("the Bowie username"). Based on the following information, your affiant believes "Randolph Brooks" to be a typographical error or alias and is instead meant to be **Brooks**.

68.     Specifically, **Brooks** listed the Bowie address under his primary contact information on the Kingdom Tabernacle EIDL application. He further listed the 240 Number under his primary contact information and business contact for the Kingdom Tabernacle EIDL application and as his contact number on the Cars Direct PPP loan application. Finally, the email address **Brooks** used on the Kingdom Tabernacle EIDL application and the Cars Direct PPP loan application incorporates the Bowie username.

69.     Based on the foregoing information, your affiant believes **Brooks** was *at least* a party to the submission of the DC Dragons EIDL loan application.

_____

[5] An Internet Protocol address, more commonly known as an IP address, is a numerical label assigned to each device connected to a computer network that uses the Internet Protocol for communication. An IP address serves two main functions: host or network interface identification and location addressing.

### Madaro Celtic Bank PPP Loan via Bluevine

70.     On May 11, 2020, **Brooks** submitted a PPP loan application, on behalf of Madaro, to Bluevine for a $204,266 loan. **Brooks** represented on the loan application that Madaro had 22 employees and an average monthly payroll of $81,706. **Brooks** was listed as the primary contact for Madaro and signed the application as the owner.

71.     In support of the loan application, **Brooks** submitted to Bluevine a 2019 IRS Form 940. The Form 940 reported $980,481 in total payments to employees from Madaro. The Form 940 was signed by **Brooks** as the owner and dated February 8, 2020.

72.     Records obtained from the IRS reflect that the foregoing Form 940 in the name of Madaro was not on file with the IRS. Further, IRS records did not identify record of *any* filings, to include Forms 940, made by Madaro for any tax periods. Based on this information, your affiant believes that for the Form 940 provided by **Brooks** to Bluevine in support of the Madaro PPP loan application was fraudulent.

73.     On May 11, 2020, the Madaro PPP loan was approved and executed. **Brooks** signed the note as the owner of Madaro. On May 13, 2020, Celtic Bank deposited $204,266 **TARGET ACCOUNT 11** at PNC Bank.

74.     **Brooks** opened **TARGET ACCOUNT 11** on September 4, 2019, in the name of Madaro. He is the sole signor on the account. Prior to the PPP loan proceeds, **TARGET ACCOUNT 11** had a total of $280 in deposits and no expenditures outside of bank fees.

75.     As of January 29, 2020, **TARGET ACCOUNT 11** had a balance of **$189,376.46**. The only debits observed from **TARGET ACCOUNT 11** since the receipt of PPP loan proceeds were a $10,000 deposit on a residential home and multiple purchases from Zzounds.com.[6] Based on your affiant's review of the records, there is no evidence that **Brooks** utilized the PPP loan

---

[6] ZZounds.com is an online retailer selling musical equipment and instruments.

proceeds in **TARGET ACCOUNT 11** for payroll or allowable business expenses as outlined by the PPP loan guidelines and attested to by **Brooks** on the PPP loan application.

**CONCLUSION**

76.     Based on the foregoing, I submit that there is probable cause to believe that **Brooks** committed violations of 18 U.S.C. §§ 1343 (Wire Fraud) and 1344 (Bank Fraud) by submitting false PPP loan applications and that the **TARGET ACCOUNTS** and **TARGET VEHICLE** identified in this affidavit are subject to seizure and forfeiture.

77.     Based upon the foregoing facts, the **TARGET ACCOUNTS** and **TARGET VEHICLE** are forfeitable.  Violations of 18 U.S.C. §§ 1343 and 1344 give rise to forfeiture of property that constitutes or is derived, directly or indirectly, from proceeds traceable to the commission of the offense.  There is probable cause to believe that fraud proceeds flowed through the **TARGET ACCOUNTS** and were used to purchase the **TARGET VEHICLE**.

78.     Based on the foregoing, I submit that there is probable cause to seize the following properties on the ground that they constitute or are derived from proceeds of wire fraud and bank fraud, in violation of 18 U.S.C. §§ 1343 and 1344, and are subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), 984 and 28 U.S.C. § 2461(c).

- up to $793.57 from **TARGET ACCOUNT 1;**
- up to $52,293.85 from **TARGET ACCOUNT 2;**
- up to $500,000 from **TARGET ACCOUNT 3;**
- up to $24,455 from **TARGET ACCOUNT 4;**
- up to $200,062.98 **TARGET ACCOUNT 5;**
- up to $9,653.87 from **TARGET ACCOUNT 6;**
- up to $1,056,320.35 from **TARGET ACCOUNT 7;**
- up to $12,935.88 from **TARGET ACCOUNT 8;**

- up to $150,227.98 from **TARGET ACCOUNT 9;**

- up to $100,016.92 from **TARGET ACCOUNT 10;**

- up to $189,376.46 from **TARGET ACCOUNT 11;** and

- the **TARGET VEHICLE.**

Respectfully submitted,

*Matthew Riemenschneider*   3/25/21

Matthew Riemenschneider
Special Agent
Federal Bureau of Investigation

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with
Fed. R. Crim. P. 4.1 and 41(d)(3) this ___29th___ day of March, 2021.

Honorable Gina L. Simms
United States Magistrate Judge

**ITEMS TO BE SEIZED**

Monies held in the following bank accounts at Bank of America:

- up to $793.57 from **Bank of America Account Number 4460-2148-8469  held in the name of Cars Direct by Gavawn HWB Bobs Motor Inc.**

- up to $52,293.85 from **Bank of America Account Number 4460-4490-6494 held in the name of Rudolph E. Brooks Jr.**

- up to $500,000 from **Bank of America Account Number 4460-4618-2287 held in the name of Payroll by BJM**

- up to $24,455 from **Bank of America Account Number 4460-4648-5007 held in the name of Cars Direct by Gavawn HWB Bobs Motor Inc.**

- up to $200,062.98 from **Bank of America Account Number 4460-4648-5010 held in the name of Cars Direct by Gavawn HWB Bobs Motor Inc.**

- up to $9,653.87 from **Bank of America Account Number 4460-4121-2466 held in the name of Tabernacle of Restoration Ministries Inc.**

- up to $1,056,320.35 from **Bank of America Account Number 4450-4121-2495 held in the name of Tabernacle of Restoration Ministries Inc.**

- up to $12,935.88 **from Bank of America Account Number 4460-3459-5297 held in the name of Tabernacle of Restoration Ministries Inc.**

**<u>Attachment A-2</u>**
**ITEMS TO BE SEIZED**

Monies held in the following bank accounts at USAA Federal Savings Bank:

- up to $150,227.98 from **USAA Federal Savings Bank Account Number 01097-0020-1 held in the name of Rudolph Brooks, Jr.**

- up to $100,016.92 from **USAA Federal Savings Bank Account Number 01097-0019-8 held in the name of Rudolph Brooks, Jr.**

Monies up to $189,376.46 from **PNC Bank Account Number 53-6132-6527 held in the name of Madaro, LLC.**

**Attachment A-4**
**ITEMS TO BE SEIZED**

A 2018 Tesla Model 3, **Vehicle Identification Number 5YJ3E1EBXJF1062229.**